UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JOGINDER SINGH,

                         Plaintiff,

           -against-

TOPLINE NYC CONTRACTING INC.,
TOPLINE NYC INC., GURPREET SINGH, and
LAKHVINDER SINGH,

                         Defendants.

-----------------------------------------------------------------X

Case No.: 1:25-cv-00776

**COMPLAINT**

Plaintiff Joginder Singh (hereinafter "Singh" or the "Plaintiff"), by his attorneys, Sage Legal LLC, as and for his Complaint against Defendants Topline NYC Contracting Inc. ("Topline Contracting"), Topline NYC Inc. ("Topline NYC") (Topline Contracting and Topline NYC collectively hereinafter the "Corporate Defendants"), Gurpreet Singh ("Gurpreet"), and Lakhvinder Singh ("Lakhvinder") (Gurpreet and Lakhvinder collectively hereinafter the "Individual Defendants") (the Corporate Defendants and the Individual Defendants collectively hereinafter the "Defendants") hereby allege as follows:

## NATURE OF THE CASE

1.       The Defendants have engaged in an outrageous scheme to run a business for their benefit by fraudulently forming a corporation in Plaintiff's name without his knowledge, taking all of the assets and money out of the business, and leaving Plaintiff holding the bag for any and all liabilities that may arise.

2.       Defendants' brazen and criminal scheme, carried out by engaging in wire fraud, mail fraud, the use of forged instruments, and other wrongful criminal acts, must be stopped immediately.

3.    Defendants employed Plaintiff as a construction laborer and abused their relationship with him and his limited English communication skills in furtherance of their scheme.

4.    Defendants also failed to pay minimum wage and overtime wages for Plaintiff's years of labor.

5.    Absent relief, Plaintiff is at risk of being forced to file for bankruptcy.

6.    This is an action for damages related to Defendants' unlawful conspiracy and scheme to engage in wire fraud and mail fraud by, among other things, providing false and misleading financial information to city agencies for obtaining permits, signing checks they had no authority to sign, opening bank accounts by providing false and misleading information to financial institutions, and depositing into those accounts – in the name of Plaintiff but controlled by Defendants – checks made payable to Plaintiff but diverted for Defendants' own use, and holding Plaintiff out to be the owner of Topline when he had no idea he was an owner, resulting in Defendants' (i) violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"); (ii) violation of New York Labor Law ("NYLL") whistleblower law, (iii) violation of the Fair Labor Standards Act ("FLSA"), (iv) violation of the NYLL's minimum wage and overtime compensation provisions, (v) unjust enrichment; (vi) conversion; (vii) fraud; and (viii) civil conspiracy.

7.    Specifically, Defendants must be prevented from operating a business in Plaintiff's name as their own, defrauding Plaintiff, customers, banks, and lending institutions, and operating businesses that were formed solely through Defendants' fraudulent schemes.

8.    In addition to being enjoined from their conduct which has threatened to put Plaintiff in financial ruin, Defendants must pay damages for the harm they have caused to Plaintiff.

## PARTIES

9.      Singh is a former employee of Defendants is and was at all relevant times a resident of the State of New York, Nassau County.

10.      Gurpreet is and was at all relevant times a resident of the State of New York, Queens County.

11.      Lakhvinder is and was at all relevant times a resident of the State of New York, Queens County.

12.      Upon information and belief, the Individual Defendants are owners of Topline Contracting and Topline NYC.

13.      Topline Contracting is a corporation duly incorporated under the laws of the State of New York with its principal place of business at 9219 101st Avenue, Ozone Park NY, 11416 in the County of Queens.

14.      Topline NYC is a corporation duly incorporated under the laws of the State of New York with its principal place of business at 11814 Rockaway Boulevard, South Ozone Park, NY respectively in the County of Queens.

15.      The Individual Defendants are each responsible for the day-to-today operations of Topline Contracting and Topline NYC.

## JURISDICTION AND VENUE

16.       This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(a).

17.      Furthermore, this court has subject matter jurisdiction pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 201, *et seq.*, 29 U.S.C. § 216(b), as well as the NYLL's wage and whistleblower provisions NYLL §§ 190, *et seq.*, 650, *et seq.*, and 740.

18.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b), as it is the district in which Defendants conduct business and in which the conduct complained of occurred.

19.    Defendants' employees engage in interstate commerce; therefore, they are covered by the FLSA on an individual basis.

20.    Defendants are an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA.

21.    At all material times, Defendants have been an enterprise in commerce or is in the production of goods for commerce within the meaning of section 203(s)(1) of the FLSA because Defendants have had and continue to have employees engaged in commerce. 29 U.S.C. § 203(s)(1).

22.    Furthermore, Plaintiff is covered under the FLSA's individual coverage provisions because he moved pillars and scaffolding, among other things, which were items that moved in interstate commerce.

## FACTS

23.    Plaintiff is an immigrant who arrived in the United States of America in October 2016 and has very limited English communication skills.

24.    Upon arrival, Plaintiff met Defendants, who offered him work as a construction laborer and an apartment to live in.

25.    Defendants paid Plaintiff $18,500.00 per year for his labor and charged him $500.00 per month for rent for housing they provided him.

26.    Plaintiff, unbeknownst to him until recently, was held up to be the purported owner of the Defendants' enterprise and the holder of a general contractor's license as part of Defendants' effort to avoid liability for their conduct.

27.    On or about November 30, 2018, a certificate of incorporation was filed with the State of New York Department of State for Topline Contracting with Plaintiff's forged signature putting the entity in his name.

28.    Upon information and belief, Defendants intended to deceive the State of New York with a forged signature on the certificate of incorporation for Topline Contracting all while Defendants knew they did not have authority to act on Plaintiff's behalf.

29.    On or about May 21, 2019, the New York City Department of Buildings issued a general contractor's license ID #620602 under Plaintiff's name, without his knowledge or permission, on the basis of a fraudulent application the signature for which was forged.

30.    Upon information and belief, Defendants intended to deceive the New York City Department of Buildings by submitting a forged signature on the contractor's license application and Defendants knew they did not have authority to act on Plaintiff's behalf.

31.    Over 1,800 permits have been filed with the New York City Department of Buildings under Plaintiff's name and general contractor's license without his knowledge or permission.

32.    Upon information and belief, Defendants intended to deceive the New York City Department of Buildings by submitting fraudulent permit applications and Defendants knew they did not have authority to act on Plaintiff's behalf.

33.    Defendants controlled Topline Contracting's finances with a checking account at Capital One Bank, purportedly Plaintiff's company, without Plaintiff's knowledge or permission.

34.     Upon information and belief, Defendants forged Plaintiff's signature on twenty-one (21) checks, just in September 2023 and October 2023, drawing on Topline Contacting's Capital One Bank Account.

35.     In September 2023 alone, Defendants deposited over $385,000.00 and removed over $540,000.00 from the Capital One Bank account for Topline Contracting under their control.

36.     Defendants engaged in mail fraud and wire fraud, funneling hundreds of thousands of dollars in revenue through this illicit scheme, all unbeknownst to the Plaintiff.

37.     Plaintiff brings this case on his own behalf under RICO, 18 U.S.C. § 1962.

38.     Defendants' brazen and criminal scheme, carried out by engaging in wire fraud, mail fraud, the use of forged instruments, and other wrongful criminal acts, demands relief.

39.     The allegations herein describe Defendants' actions to first hold Plaintiff out as the owner of the business by defrauding, cheating, and stealing from Plaintiff, government agencies, and the public at large, and hiding their actions by manipulation.

40.     Specifically, Defendants must be prevented from operating under Plaintiff's name as their own, defrauding Plaintiff, customers, government agencies, and financial institutions, operating businesses that were formed solely through Defendants' fraudulent schemes and utilizing Plaintiff's name by the Defendants to extract money from the Plaintiff and leave him holding the liabilities, all of which is being done to decimate Plaintiff's personal finances, ability to work, or properly utilize his identity while Defendants take all the money earned therefrom.

41.     The Defendants' conduct which has threatened to and caused imminent damage to Plaintiffs' ability to be a productive citizen and seek gainful employment, requires Defendants to pay damages for the harm they have caused to Plaintiff's name and reputation.

42.     Defendants devised a scheme with the goal of defrauding the local, state and federal government agencies and tax authorities in order to avoid paying the requisite taxes and being held responsible for their obligations under the law.

43.     Defendants benefitted from the scheme by realizing more profits than what they would have without the scheme, as follows:

       a.     The acquisition of construction jobs requires a permit issued by the New York City Department of Buildings.

       b.     The application for the permits requires an owner who remains responsible as the licensee for the company's compliance.

       c.     The Individual Defendants are members of the Enterprise exerting common control/ownership, shared personnel and/or one or more contracts or agreements relating to and for the purpose of purportedly operating Topline Contracting and/or Topline NYC.

       d.     Defendants held Plaintiff to be the owner of Topline Contracting by either incorporating said enterprise under the Plaintiff's name or holding the Plaintiff's name out falsely to lending institutions and municipal agencies.

44.     As a result of these schemes Plaintiff was economically harmed by exposure to municipal liabilities, penalties, local taxes, state taxes, federal taxes, and liabilities to financial institutions.

45.     By using checks and other transactions, Defendants engaged in wire fraud to further their scheme.

46.     Defendants used the United States Postal Service to further their scheme by sending incorrect and/or fraudulent building permit statements to the New York City Department of Buildings.

47.     By submitting fraudulent permit applications and fraudulently obtaining a general contractor's license Defendants used an interstate wire communication to further their scheme.

## RICO ENTERPRISE

48.     Plaintiff is a "person" as within the meaning of 18 U.S.C. § 1964(c).

49.     Each individual Defendant is a "person" within the meaning of 18 U.S.C. § 1964(c).

50.     Plaintiffs and the Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3).

51.     Defendants Gurpreet, Lakhvinder, others unknown at this time, and the Corporate Defendants carried out their racketeering activity through an association-in-fact "enterprise" (the "Enterprise"), as the term is defined in 18 U.S.C. § 1961(4).

52.     The legal entities were used for illegal purposes by the unofficial, corrupt "enterprise."

53.     Although all Defendants participated in the Enterprise and were a part of it, they each also have an existence separate and distinct from the Enterprise.

54.     The common purpose of the enterprise was to defraud the local, state and federal authorities, Plaintiff, as well as financial institutions in order to realize a greater financial benefit for the Defendants while insulating themselves from liability.

55.     Through the criminal fraud schemes described above, the Defendants knowingly, and with specific intent to profit, operated and managed the enterprise through a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c).

56.    Gurpreet conspired with Lakhvinder and others unknown at this time in order to further the schemes described above in violation of RICO, 18 U.S.C. § 1962(d).

57.    This pattern of illegal activities committed by the Defendants, the "Predicate Acts," discussed below, were done with the purpose of financial gain/benefit and were done within the past seven (7) years.

58.    By the acts alleged herein, Defendants, each and every one of them, jointly and severally, have aided and abetted and conspired to violate the law, through their ongoing criminal enterprise as set forth below.

59.    The Defendants each intended the natural and obvious results of their actions.

## PREDICATE RACKETEERING ACTS

60.    In order to perpetrate their criminal fraud scheme, Defendants knowingly and willfully committed the following predicate racketeering offenses of Mail and Wire fraud under RICO.

61.    The predicate acts were not isolated events, but were related and continuous acts aimed at the common purpose and goal of defrauding the City, State and Federal government agencies, as well as the Plaintiff, for financial gain.

### Predicate Criminal Violations of Federal Mail Fraud Statute 18 U.S.C. § 1341

62.    The Defendants could be charged and convicted of multiple, related violations of law which form a pattern, constitute mail fraud, and are each potentially punishable by more than one (1) year in jail.

63.    Defendants acted in criminal violation of the federal mail fraud statute under 18 U.S.C. § 1341 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of

false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

64.    Defendants knowingly used the mail with the specific intent of executing and furthering this fraudulent scheme, in violation of 18 U.S.C. § 1341.

65.     Defendants' use of the United States Postal Service was an essential part of the scheme to defraud, namely to deceive and/or defraud the City, State and Federal government agencies, the Plaintiff, and various financial institutions, including Capital One Bank.

66.    Defendants used the mail to send checks and documents related to building permits to financial institutions and government agencies in order to defraud them as well as Plaintiff with the specific intent of furthering this fraudulent scheme, in violation of 18 U.S.C. § 1341.

67.    In order to achieve or attempt to achieve the fraud described in the preceding paragraphs, Defendants sent correspondence and other documents that were sent or delivered by the United States Postal Service.

### *Predicate Criminal Violations of Federal Wire Fraud Statute 18 U.S.C. § 1343*

68.    The Defendants could be charged and convicted of multiple, related violations of law which form a pattern, constitute wire fraud, and are each potentially punishable by more than one (1) year in jail.

69.     Defendants further acted in criminal violation of the federal wire fraud statute under 18 U.S.C. 1343 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

70.     Defendants knowingly used the interstate wire communication with the specific intent of executing and furthering this fraudulent scheme, in violation of 18 U.S.C. § 1343.

71.     Defendants' use of wire communication was incident to an essential part of the scheme to defraud, namely to deceive and/or defraud the City, State and Federal authorities, the Plaintiff, and financial institutions.

72.     Defendants devised or intended to devise a scheme or artifice meant to defraud and/or to obtain money or realize monetary gain from local, state and federal authorities, as well as financial institutions.

73.     Defendants transmitted or caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice when they transmitted telephone and cellular telephone calls, documents, facsimiles, emails, instant messages, and any other form of communication.

74.     In order to achieve or attempt to achieve the fraud described in the preceding paragraphs, Defendants sent correspondence and other documents that were sent or delivered by the United States Postal Service.

## PATTERN OF RACKETEERING ACTIVITY

75.    The predicate acts of criminal racketeering activity described above constitute a "pattern of racketeering activity" as defined by RICO, 18 U.S.C. § 1961(5).

76.    As described above, Defendants repeatedly committed the predicate acts over a period of several years spanning at least seven (7) years.

77.    In addition, Defendants repeatedly engaged in unlawful acts to further their criminal scheme upon the Plaintiff.

78.    Defendants willingly, and with full knowledge of her actions and the natural and obvious consequences of those actions, conspired with each other to further the enterprise and assist him in committing a pattern of racketeering activity.

79.    The predicate acts of criminal racketeering activity described above were related in at least the following ways:

   a.     They had common participants;

   b.    They each had the same victims, namely the Plaintiff, government entities, and financial institutions;

   c.    They each had the same purpose of defrauding government entities, financial institutions, and the Plaintiff for the benefit of the Defendants and at the expense of Plaintiff;

   d.    They each accomplished this purpose through use of mail and wire fraud;

   e.    They were interrelated in that, without the acts of mail fraud and wire fraud, the Defendants would not have been able to exploit Plaintiff and deprive him of his rights and property, as well as others described herein.

80.    Such acts of racketeering activity have been part of the Defendants' regular way of doing business through the enterprise(s) described above for at least seven (7) years beginning in October 2017 and has continued through at least the termination of Plaintiff's employment on December 20, 2022.

81.    Throughout the relevant time period, each Defendant was a culpable "person" as defined by RICO, 18 U.S.C. § 1961(3).

### RULE 23 CLASS ALLEGATIONS

*82.*    Plaintiff also brings this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule") on his own behalf and on behalf of all similarly situated current and former employees of Defendants who are or were employed at any time in the last six (6) years, including all current and former employees.

*83.*    Plaintiff reserves the right to amend the putative class definition if necessary.

84.    Plaintiff shares the same interests as the putative class and will be entitled under the FLSA to liquidated damages, attorneys' fees, and costs owed to them under nearly identical factual and legal standards as the remainder of the putative class.

85.    The putative Class meets the numerosity requirement of Rule 23(a)(1) because, during the relevant period, Defendants employed at least forty (40) employees.

86.    The Class members are so numerous that joinder of all such persons is impracticable and that the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court.

87.    The precise number of Class members should be readily available from a review of Defendants' personnel, scheduling, time, phone, and payroll records, and from input received from the putative Class members.

88.    The putative Class meets the commonality requirement of Rule 23(a)(2) because, during the relevant period, Defendants engaged in a common course of conduct that violated the legal rights of Plaintiff and the Class.

89.    Individual questions that Plaintiff's claims present, to the extent any exist, will be far less central to this litigation than the numerous material questions of law and fact common to the Class, including but not limited to whether Defendants engaged in a common policy or scheme that violated the FLSA.

90.    The putative Class meets the typicality requirement of Rule 23(a)(3) because Plaintiff and the putative Class members were all employed by Defendants and were not properly paid.

91.    The Class meets the adequacy requirement of Rule 23(a)(4) because there is no apparent conflict of interest between Plaintiff and the putative Class members, and because Plaintiff's attorneys are experienced in class action litigation, and will adequately represent the interests of Plaintiffs and the putative Class members.

92.    The putative Class meets the predominance requirement of Rule 23(b)(3), because issues common to the Class predominate over any questions affecting only individual members, including but not limited to, those listed above.

93.    The Class meets the superiority requirement of Rule 23(b)(3) because allowing the parties to resolve this controversy through a class action would permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.

94.     Given the material similarity of the Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of dozens or even hundreds of identical actions.

95.     Individual litigation of the legal and factual issues raised by Defendants' conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources.

96.     Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative Class's claims, create significant economies of scale for the Court and the parties and result in a binding, uniform adjudication on all issues.

## UNPAID WAGES

97.     Plaintiff was never properly paid as an employee.

98.     Throughout Plaintiff's employment by the Defendants, Plaintiff engaged in daunting physical labor at Defendants' construction yard.

99.      Plaintiff worked for the Defendants from October 2017 to December 2022, a period of 244 weeks.

100.    Plaintiff had an agreement with Defendants such that he would be paid wages for the manual labor he performed.

101.    Plaintiff was directed to work off the clock outside of normal working hours to fulfill the requirements of the Defendants.

102.    Every week he worked, Plaintiff worked in excess of fifty (50) hours per week performing work for the Defendants for which he was not paid an overtime premium for.

103.    For example, in the final week in February 2022, Plaintiff worked fifty (50) hours for Defendants, and he was not paid any additional overtime compensation arising out of his work that week.

104.    For his work, Plaintiff was paid $18,500.00 per year.

105.    This is a violation of the minimum wage provisions and overtime provisions of the FLSA and NYLL, as Plaintiff earned $7.12 per hour when the current minimum wage under the FLSA is $7.25 while the minimum wage under the NYLL in 2022 was $15.00 per hour.

106.    As a result and by way of example, under New York law, Plaintiff was underpaid by at least $469.23 per week for every week he worked in 2022.

## WILLFUL VIOLATION OF FLSA & RETALIATION

107.    Termination of Plaintiff's employment was an attempt by Defendants to subvert its obligations under state and federal wage law as well as to punish him for questioning their non-payment of overtime compensation.

108.    Defendants willfully terminated Plaintiff in retaliation for Plaintiff complaining to Defendants about his right to receive an overtime premium for all hours worked in excess of forty (40) hours in a work week.

109.    Defendants knew or should have known that terminating Plaintiff in retaliation was a violation of the FLSA. 29 U.S.C.A. § 215(a)(3).

110.    The FLSA, 29 U.S.C. § 216(a), provides that as a remedy for a violation of the retaliation provision of the FLSA, such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, punitive, and any emotional pain and suffering endured by the Plaintiff due to the retaliatory termination.

111.    Defendants terminated Plaintiff's employment in direct retaliation for Plaintiff's inquiry and complaint about Defendants' pay practices.

112.    Plaintiff's work habits had not changed and there were no occurrences that would give Defendants cause to fire Plaintiff.

113.    Plaintiff was not given a reason for his termination.

114.    Plaintiff was fired for, *inter alia,* inquiring about Defendants' pay practices.

115.    Plaintiff suffered adverse employment action in the form of termination by Defendants.

## FIRST CAUSE OF ACTION OF THE PLAINTIFF
### (Violation of RICO, 18 U.S.C. § 1961 *et seq* – Mail and Wire Fraud)

116.    Plaintiff realleges and incorporates herein all previous paragraphs.

117.    Each Defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) in that each is either an individual, corporation, or limited liability company, or other person capable of holding a legal interest in property.

118.    At all relevant times, each of the Gurpreet and Lakhvinder Defendants was, and is, a person that exists separate and distinct from the Enterprise, described below.

119.    Gurpreet and Lakhvinder control the Corporate Defendants and are the masterminds of the Enterprise, which consists of Gurpreet and Lakhvinder, and each of their respective corporate entities.

120.    Topline Contracting, is an enterprise engaged in and whose activities affect interstate commerce. Defendant Gurpreet and Defendant Lakhvinder are employed by or associated with the enterprise.

121.    Topline NYC, is an enterprise engaged in and whose activities affect interstate commerce. Defendant Gurpreet and Defendant Lakhvinder are employed by or associated with the enterprise.

122.    Defendants associated with an enterprise engaged in, or whose activities affect interstate or foreign commerce to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity, including repeated acts of mail fraud and wire fraud are in violation of RICO, 18 U.S.C. § 1962(c).

123.    Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff, financial institutions, and the New York City Department of Buildings.

124.    Specifically: (i) all instances where a direct deposit was authorized by Defendants; and (ii) where Defendants forged a signature on a check, submitted fraudulent documents, or submitted a fraudulent permit application; and (iii) all instances where Defendants communicated with the City, State or Federal authorities and represented incorrect ownership of the Enterprise due to the fraudulent Plaintiff's identity.

125.    As a direct, intended, and foreseeable result of the Defendants' violations of RICO, through the criminal scheme described above, Plaintiff has suffered injury to their property, including the loss of money, loss of good reputation, loss of identity, exposure to additional tax liability, and emotional distress, along with fines and interest.

126.    The criminal acts of mail fraud and wire fraud committed by Defendants were directly related to and were substantial factors in causing injury to Plaintiff.

127.    The acts mail fraud and wire fraud set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

128.    Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity above, in violation of 18 U.S.C. § 1962(c).

129.    Plaintiff is entitled to relief, including treble damages and attorneys' fees pursuant to RICO, 18 U.S.C. §1964(c).

**SECOND CAUSE OF ACTION OF THE PLAINTIFF**
**(Violation of RICO, 18 U.S.C. § 1961 *et seq* – Conspiracy to Violate RICO)**

130.    Plaintiff realleges and incorporates herein all previous paragraphs.

131.    Defendants conspired by entering into an agreement to commit one or more of the predicate acts outlined above in furtherance of their criminal scheme to defraud the City, State, and Federal authorities as well as the Plaintiff.

132.    Defendants conspired by entering into an agreement to commit one or more of the predicate acts outlined above in furtherance of their criminal scheme to defraud their financial institutions.

133.    Defendant Gurpreet willfully, intentionally and with full knowledge of the actions taken and their natural and obvious consequences conspired with Defendant Lakhvinder to further the criminal scheme to defraud the Plaintiff, and local, state, and federal authorities as well as the Plaintiff.

134.    Defendant Lakhvinder willfully, intentionally and with full knowledge of the actions taken and their natural and obvious consequences conspired with Defendant Gurpreet to further the criminal scheme to defraud the Plaintiff, and local, state, and federal authorities as well as the Plaintiff.

135.    Defendants have directly and indirectly participated in the conduct that furthered the schemes of the enterprise affairs through the pattern of racketeering and activity above, in violation of 18 U.S.C. § 1962(d).

136.    Plaintiff is entitled to relief, including treble damages and attorneys fees pursuant to RICO, 18 U.S.C. §1964(c).

### THIRD CAUSE OF ACTION OF THE PLAINTIFF
**(Violation of Whistleblower Law, NYLL § 740 *et seq* – Violations of Whistleblower Provisions)**

137.    Plaintiff realleges and incorporates the previous paragraphs by reference.

138.    Plaintiff learned about Defendants' fraudulent scheme while he was employed.

139.    Plaintiff confronted the Defendants about the scheme and demanded that they immediately cease and desist.

140.    Defendants refused to do so and simply terminated Plaintiff.

141.    NYLL § 740(2) provides that:

An employer shall not take any retaliatory action against an employee, whether or not within the scope of the employee's job duties, because such employee does any of the following.... discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation...

142.    As set forth above, Plaintiff was an employee of the Defendants and reported directly to Defendants Gurpreet and Lakhvinder.

143.    Plaintiff engaged in protected activity when he complained to the Defendants about the fraudulent schemes that the Defendants and the Enterprise were committing against Local, State, and Federal Officials as well as to his person.

144.    The actions by The Enterprise with whom the Defendants were complicit, are in violation of federal law 18 U.S.C. §1001 *et seq* which provides:

(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall be fined under this title, imprisoned not more than 5 years.

145. The New York Department of Buildings falls under this provision as it receives funding from federal grants which aligns it to the rules and regulations of the Federal branches of government.

146. The New York Penal law similarly provides, NY Penal Law § 190.65 a Scheme to defraud in the first degree as:

1. A person is guilty of a scheme to defraud in the first degree when he or she: (a) engages in a scheme constituting a systematic ongoing course of conduct with intent to defraud ten or more persons or to obtain property from ten or more persons by false or fraudulent pretenses, representations or promises, and so obtains property from one or more of such persons; or (b) engages in a scheme constituting a systematic ongoing course of conduct with intent to defraud more than one person or to obtain property from more than one person by false or fraudulent pretenses, representations or promises, and so obtains property with a value in excess of one thousand dollars from one or more such persons; or (c) engages in a scheme constituting a systematic ongoing course of conduct with intent to defraud more than one person.

147. On or about December 2022, immediately after Plaintiff made another complaint about the fraudulent practices, in retaliation for making those complaints, Defendants launched a vengeful scheme against Plaintiff by terminating him, causing him serious mental, emotional, physical and monetary distress, and unlawfully discharged him from his position.

148. Plaintiff engaged in protected activity when he complained on several occasions to Defendant about the fraudulent schemes.

149. By engaging in the foregoing conduct, Defendant and the Enterprise conducted direct and willful violations of NYLL § 740.

150.    As described, Defendants engaged in conduct and subjected Plaintiff to adverse actions against in retaliation for Plaintiff's complaints of municipal, wage, and financial institution fraud.

151.    As a direct and proximate result of Defendants retaliation in violation of NYLL § 740, Plaintiff suffered, and continues to suffer loss of income, unpaid wages, severe mental anguish and emotional distress, including but not limited to depression, humiliation, and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, and physical pain and suffering.

152.    As a direct and proximate result of Defendants' action in violation of NYLL § 740, Plaintiff is entitled to damages for back pay, front pay, failure to pay wages, reimbursement for medical fees, pain and suffering from the assault, and emotional distress.

153.    Defendants retaliated against Plaintiff who had a good faith belief that their actions were unlawful.

154.    Because Defendants' unlawful actions in violation of NYLL § 740 were so egregious, Plaintiff is entitled to punitive damages, plus attorneys' fees and costs.

### FOURTH CAUSE OF ACTION OF THE PLAINTIFF
**(Retaliation in Violation of the FLSA 29 U.S.C. § 215(a)(3))**

155.    Plaintiff realleges and incorporates all previous paragraphs.

156.    The FLSA, 29 U.S.C. § 201, et seq. establishes minimum wage and overtime pay requirements.

157.    Defendants Gurpreet and Lakhvinder, agents acting on their own behalf and on behalf of the Defendants Topline NYC contracting and Topline NYC, terminated Plaintiff's employment and has taken action in retaliation of Plaintiff complaining about Defendants' pay practice of not paying an overtime premium.

158.    Defendants ordered the termination of Plaintiff's employment was due to, *inter alia,* his complaining about his right to receive an overtime premium.

159.    Plaintiffs' termination of employment constitutes unlawful retaliation under the FLSA, 29 U.S.C. §215(a)(3).

160.    Defendants knowingly, willfully, maliciously, intentionally and without justification acted to deprive Plaintiff of his rights.

### FIFTH CAUSE OF ACTION OF THE PLAINTIFF
**(Unpaid Wages in Violation of FLSA, 29 U.S.C. § 201, *et seq.* and NYLL §§ 190, *et seq.*, 652(1); 12 NYCRR § 142-3.2)**

161.    The FLSA permits an employee to recover wages for as long as three (3) years prior for willful violations.

162.    The NYLL permits an employee to recover wages for as long as six (6) years prior.

163.    In addition, under both laws, any wages recovered are doubled for "liquidated damages," and entitle Plaintiff to recover attorneys' fees based on the number of hours his attorneys worked on his claims at their reasonable hourly rates, in addition to pre-judgment interest, post-judgment interest, and costs.

164.    The NYLL similarly provides for this.  See NYLL § 652(1); 12 NYCRR § 142-3.2.

165.    An employer that fails to pay proper overtime wages must pay the employee the balance of wages owed and liquidated damages equal to the amount of wages owed.

166.    Plaintiff had an agreement with the Defendants and the Enterprise such that he would earn additional money for her work in addition to the forty (40) hours of work she performed per week.

167.    Further, he regularly worked up to fifty (50) hours per week and was not paid time-and-a-half for overtime hours worked.

168.    Plaintiff has been harmed in that he did not receive compensation to which he was entitled.

### SIXTH CAUSE OF ACTION OF THE PLAINTIFF
### (Civil Conspiracy – Gurpreet Singh and Lakhvinder Singh Defendants)

169.    Plaintiffs incorporate by reference each of the foregoing allegations as though fully set forth herein.

170.    The Individual Defendants conspired with each other for an unlawful purpose, to wit: to obtain Plaintiffs' confidential information and to use that information to obtain money through fraud leaving Plaintiff holding the liabilities unbeknownst to him.

171.    Defendants have entered into a civil conspiracy to engage in, *inter alia*, unjust enrichment.

172.    The Individual Defendants each agreed to this common goal and acted in concert with the specific object of harming Plaintiff for their own personal gain.

173.    Each Defendant performed an overt act in furtherance of the conspiracy.

174.    The unlawful alleged herein, including acts directed into the State of New York, were committed in furtherance of that conspiracy.

175.    As a result of the Defendants' combined, concerted, and continuing efforts, Plaintiff was, is, and continues to be damaged.  Due to Defendants' acts of theft, Plaintiff has been injured, and is entitled to recover damages including but not limited to financial loss, loss of goodwill and reputation, compensatory and special damages, interest, and punitive damages, in an amount to be determined at trial, directly caused by Defendants' misconduct.

**SEVENTH CAUSE OF ACTION OF PLAINTIFFS TOPLINE NYC
CONTRACTING AND TOPLINE NYC
(Declaratory Judgment – Defendants)**

176.     Plaintiffs incorporate by reference each of the foregoing allegations as though fully set forth herein.

177.     Individual Defendants claim ownership and/or control over Topline Contracting and Topline NYC's bank accounts and future receipts.

178.     Individual Defendant's right to Topline NYC Contracting and Topline NYC Contracting's future receipts and bank accounts is not legitimate.

179.     Individual Defendant's right to withdraw from the Topline Contracting and Topline NYC's bank account(s) is not legitimate.

180.     There exists a justiciable controversy which is ripe for judgment.

181.     Topline NYC Contracting and Topline NYC has no adequate remedy at law.

**AS AND FOR THE EIGHTH CAUSE OF ACTION OF PLAINTIFF
(Conversion)**

182.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

183.     As set forth in detail above, Defendants have exercised unauthorized dominion or a right of ownership over the assets of Plaintiff, who has superior rights to the assets, and refused their return to Plaintiff despite due demand.

184.     Defendant has converted the assets of the Enterprise for his own use.

185.     By reason of the foregoing, Plaintiff demands judgment against Defendant for a sum of $60,000,000.00.

## AS AND FOR THE EIGHTH CAUSE OF ACTION OF DEFENDATS
### (Unjust Enrichment)

186.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

187.    Defendants retention of the assets of Plaintiff has caused them to be unjustly enriched at Plaintiff's expense.

188.    The circumstances of Defendants' enrichment are such that equity and good conscience require Defendants to make restitution.

189.    By reason of the foregoing, Northshore demands judgment against Defendant for a sum of $1,000,000.00.

## DEMAND FOR JURY TRIAL

190.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues so triable in this action.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Joginder Singh requests the following relief from this honorable Court against Defendants:

a.    Certifying this action as a class action pursuant to Rule 23(b)(3);

b.    Designating Plaintiff as the representative of the proposed Rule 23 Class;

c.    Appointing Sage Legal, LLC as Class Counsel;

d.    Granting Judgment in favor of Plaintiff against Defendants and award Plaintiff treble compensatory damages for Defendants' violation of RICO;

e.    Treble damages for RICO violations totaling at least $60 million to the Plaintiff;

f.    Overtime wages in the amount of at least $228,928.24;

g.    Loss of front and back pay in the amount of at least $29,884.68;

h.  Pain and suffering damages for emotional distress in the amount of at least $500,000.00;

i.  Reimbursement of attorneys' fees and costs in the amount of at least $15,000.00;

j.  Ordering that Defendants return all of Plaintiffs' confidential and proprietary information, including a forensic examination of all of Defendants' computing devices, cellular phones, and cloud storage sites;

k.  Prohibiting the Defendants or their agents from engaging in business using Plaintiff's name;

l.  Punitive and exemplary damages in an amount to be determined at trial in this case in the amount of at least $1,000,000.00;

m.  Interest (pre-judgment & post-judgment);

n.  Equitable relief in the form of the imposition of an injunction, constructive trust, accounting, and a disgorgement of profits and other benefits received by reason of the unlawful conduct complained of herein;

o.  Declaratory Judgment that Defendants used Plaintiff's name to hold him as the owner of the business in order to procure funds and DOB building permits with the liabilities they incurred to be borne by the Plaintiff with demand of payment to free the Plaintiff's purported obligations;

p.  Enjoining Defendants from operating their enterprise by virtue of their illegal conduct since they were created entirely through fraud;

q.  Ordering that Defendants pay the costs of suit, including attorneys' fees;

r.  A judgment against Defendants in an amount consistent with the damages sustained, in excess of sixty million, five hundred thirteen thousand, eight hundred

twelve and ninety-two hundredths ($60,513,812.92) dollars, including but not limited to back pay, front pay, liquidated damages, emotional distress damages, punitive damages, and RICO violation damages;

s.  Such other and further relief as this Court deems just, equitable, and proper.

Dated: Jamaica, New York
       February 11, 2025                     Respectfully submitted,

**SAGE LEGAL LLC**

_/s/ Emanuel Kataev, Esq.___
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Plaintiff*
*Joginder Singh*