UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X          Case No. 1:25-cv-00776-NCM-VMS
JOGINDER SINGH,

                    Plaintiff,

    -against-

TOPLINE NYC CONTRACTING INC.,
TOPLINE NYC INC., GURPREET SINGH,
and LAKHVINDER SINGH,

                    Defendants.
-------------------------------------------------X

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION TO DISMISS THE COUNTERCLAIM**

Lila Ayers, Esq.
Attorney for Defendants
8 East Prospect Avenue, Suite A1
Mount Vernon, NY 10550
(914) 699-5220
lilaayerslaw@aol.com

**PRELIMINARY STATEMENT**

Here, the factual allegations are concrete and specific — plaintiff, as president, had access to the corporate bank account and used it to withdraw funds for himself and write checks to his wife, all with no corporate purpose. Those facts, accepted as true, easily satisfy the *Twombly/Iqbal* threshold across all counterclaims alleged.

**STATEMENT OF FACTS**

The following facts are taken from Defendants' Second Amended complaint and are assumed to be true for the purpose of the present motion. *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009):

Defendant Lakhvinder Singh ("Lakhvinder") sought the help of plaintiff in order to start his own business. (Second Amend. Answer and Counterclaim, Doc. 40, 11/13/2025 ¶ 1).  Plaintiff was and is married to Lakhvinder's cousin's sister. Lakhvinder and plaintiff acted as brothers-in-law. ¶ 2.  Lakhvinder asked plaintiff to open a corporation in plaintiff's name.  This was traditionally how families did business in India.  Lakhvinder did this because he had full trust in plaintiff. ¶ 3.  Plaintiff was to have *no* role whatsoever in the management or operations in the business. ¶ 4.

On or before November 30, 2018, plaintiff and Lakhvinder together went to Reliable Insurance Services, LLC in Jamaica, NY and met with Khalid who assisted them in forming the defendant corporation Topline NYC Contracting Inc ("the corporation"). ¶ 5.  The corporation has an address of 92-19 101st Avenue, Ozone Park, NY 11416.  Upon information and belief, this was the residence of plaintiff.  It was a building owned in the name of plaintiff's granddaughter, but paid for by plaintiff. ¶ 6.

After the corporation was formed, in or about early 2019, plaintiff and Lakhvinder opened a bank account at a Capital One branch in the name of the corporation.  Upon information and belief, plaintiff is listed as "president of the

1

corporation" and defendant Gurpreet Singh is listed as someone having access to the account. ¶ 7.

Thereafter, Lakhvinder ran the corporation and was very successful. Plaintiff had *no role* whatsoever in the management and operations of the corporation. ¶ 8.

Defendants decided in 2022, that they should open a new corporation and remove plaintiff's name from any corporation documents. ¶ 9. They repeatedly asked plaintiff to meet them and sign papers to remove him from the corporation. ¶ 10. On 02/01/2023, Lakhvinder formed a new corporation, defendant Topline NYC Inc. to continue his business without plaintiff's name being on any papers. ¶ 11,

Plaintiff repeatedly made excuses for not meeting and defendants got suspicious of why plaintiff kept resisting them. So, they decided to go to the corporation's bank and see what was happening with their business account. ¶ 12. In or about October, 2023, defendants went to their Capital One branch and found that their balance was way below what they expected. ¶ 13.

It turned out that plaintiff had embezzled more than $300,000 from the corporation's bank account. He did this by withdrawing cash or writing checks to his wife, with no legitimate business purpose. ¶ 14. There was *absolutely no* legitimate business reason for plaintiff to take *any* funds from the corporation's account. Plaintiff took the funds solely for his own enrichment at the expense of defendants. ¶ 15.

Lakhvinder confronted plaintiff about his stealing corporation's funds and he denied it. ¶ 16. Lakhvinder obtained documents from the bank demonstrating conclusively that plaintiff stole from them. ¶ 17. Plaintiff learned that his family members were aware of his betrayal and chose to initiate the initiate the instant lawsuit. ¶ 18. Defendants answered and counterclaimed.

Counterclaims include conversion, breach of fiduciary duty, breach of duty of

loyalty and care, unjust enrichment, and establishment of a constructive trust. Defendants recognize that the counterclaim as currently constituted is not pled with sufficient particularity under Rule 9(b).  However, defendants have subpoenaed and obtained all bank records and will revisit this issue.

**ARGUMENT**

**STANDARD FOR DECIDING A MOTION TO DISMISS**

**THE  COUNTERCLAIM**

A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint. *UPS Store, Inc. v. Hagan*, 99 F.Supp.3d 426, 434 (S.D.N.Y. 2015) (citation omitted), *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F.Supp.3d 205, 219 (S.D.N.Y. 2023).  Under the standard established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the counterclaim must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *UPS Store, Inc.*, 99 F.Supp.3d at 434. Courts apply a two-pronged approach: first, accepting as true all well-pleaded factual allegations (though not bare legal conclusions); and second, determining whether those allegations plausibly give rise to an entitlement to relief. *Id*. at 434.  All reasonable inferences are drawn in the counterclaimant's favor.

**POINT I.**

**DEFENDANTS' COUNTERCLAIM FOR CONVERSION IS VIABLE**

Under New York law, the elements of conversion are: (1) plaintiff's possessory right or interest in the property, and (2) defendant's dominion over the property or interference with it in derogation of plaintiff's rights. *Colvatio v. New York Organ Donor Network*, 8 N.Y.3d 43, 50 (2006).  Critically, "a corporate officer who applies corporate funds to purposes beyond the scope of his authority converts them." *Garner v.*

3

*First Nat. City Bank*, 465 F.Supp. 372, 380 (S.D.N.Y. 1979), quoting, *Quintal v. Kellner*, 264 N.Y. 32, 35 (1934) and "a corporate officer who uses corporate funds for his own purposes may be liable for conversion to the corporation." *Field v. Lew*, 184 F.Supp. 23, 27 (E.D.N.Y. 1960).  New York courts have long recognized that corporate officers can be liable for conversion when the act is committed on behalf of the officer's personal interests. *Citadel Management, Inc. v. Telesis Trust, Inc.*, 123 F.Supp.2d 133, 149 (S.D.N.Y. 2000).

While money is generally not subject to conversion, New York courts recognize that money held in a specific, identifiable fund can be converted. *Id.* at 147-8.  The Capital Once corporate bank account of defendants is precisely such a fund.

This Court in *Meisels v. Meisels*, 2024 WL 3889007 (E.D.N.Y. 2024) found the plaintiff's allegations of conversion of corporate funds sufficient to survive a motion to dismiss, noting that the plaintiff had identified the specific source of converted funds and that this identification found support in the complaint.  Here, defendants' counterclaim identifies the specific corporate bank account from which plaintiff made unauthorized withdrawals and wrote personal checks; this satisfies the identifiability requirement.  Plaintiff's possession of those funds was unlawful from the outset — there was no legitimate corporate authorization for the withdrawals — so no prior demand is required to state the claim. *Reserve Solutions Inc. v. Vernaglia*, 438 F.Supp.2d 280, 288 (S.D.N.Y. 2006).  Demand is required only when the original possession of the property was lawful; where, as here, the possession is unlawful from the start, the conversion is complete without demand. *Id.* at 288.

## POINT II.

## DEFENDANTS HAVE STATED A VIABLE COUNTERLCLAIM FOR BREACH OF FIDUCIARY DUTY

To state a claim for breach of fiduciary duty under New York law, a party must allege: (1) the existence of a fiduciary relationship; (2) misconduct by the defendant; and (3) damages directly caused by the misconduct. *Kleeberg v. Eber*, 665 F.Supp.3d 543, 571-2 (S.D.N.Y. 2023), *Rut v. Young Adult Inst., Inc.*, 74 A.D.3d 776, 777 (2d Dep't 2010).  All three elements are satisfied here.

New York Business Corporation Law ("BCL") § 715(h) expressly provides that "[a]n officer shall perform his duties as an officer in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances."  The president is an officer, and as such is unquestionably a fiduciary of the corporation. Any argument by plaintiff that he owed no fiduciary duty fails as a matter of statutory law. The court in *Bardwil Industries Inc. v. Kennedy*, 2020 WL 2748248 (S.D.N.Y. 2020) rejected the defendant's argument that he owed no fiduciary duties to the corporation, holding that as Secretary and Executive Vice President, he was an officer under BCL § 715(a) and therefore owed fiduciary duties under BCL § 715(h).  *A fortiori*, plaintiff as president owed such a duty.

Courts have consistently held that a corporate director has a fiduciary duty to manage corporate assets in a reasonable way and is liable for any waste or misappropriation of corporate property. *Superintendent of Insurance of the State of New York v. Freedman,* 443 F.Supp. 628, 638 (S.D.N.Y.1977), citing, *Rapoport v. Schneider,* 29 N.Y.2d 396 (1972).  Plaintiff's systematic withdrawal of corporate funds for his personal benefit — and his issuance of corporate checks to his non-employee wife — is the paradigmatic case of misappropriation.  The *Kleeberg* Court found that a

trustee-officer's self-dealing, including unauthorized payments to himself, constituted a violation of his fiduciary duty as an officer under the "no further inquiry" rule, under which courts need not even reach the fairness inquiry once a self-dealing transaction by a fiduciary is established. 665 F.Supp.3d at 570.  The same principle applies here.

The withdrawal of corporate funds directly diminished the corporation's assets, causing quantifiable damages to defendant. N.Y. BCL § 720 specifically authorizes an action against a corporate officer "to compel the defendant to account for his official conduct" where the officer has committed "neglect of, or failure to perform, or other violation of his duties in the management and disposition of corporate assets committed to his charge," including "the acquisition by himself, transfer to others, loss or waste of corporate assets."

## POINT III.

## DEFENDANTS' COUNTERCLAIM FOR BREACH OF DUTY OF CARE AND DUTY OF LOYALTY ARE VIABLE

Under New York law, corporate officers owe a duty of loyalty that derives from "the prohibition against self-dealing that inheres in the fiduciary relationship." *Norlin Corp. v. Rooney, Pace Inc.,* 744 F.2d 255, 264 (2d Cir.1984).  Directors and officers must manage the property of the corporation "in good faith, according to their best judgment and skill, and in the interest of the stockholders." *Pinnacle Consultants, Ltd. on Behalf of Shareholders of Leucadia Nat. Corp. v. Leucadia Nat. Corp.*, 923 F.Supp. 439, 447 (S.D.N.Y. 1995) (Sotomayor, J.), quoting, *Amfesco Industries, Inc. v. Greenblatt,* 172 A.D.2d 261 (1st Dep't 1991).  The duty of loyalty implies an absolute prohibition against self-dealing. *Pinnacle Consultants, Ltd.*, 923 F.Supp. at 447; *Norlin Corp.* at 264.  Moreover, in addition to the statutory good faith requirement, the duty of loyalty dictates that "[t]hey may not assume and engage in the promotion of personal

interests which are incompatible with the superior interests of their corporation." *Foley v. D'Agostino,* 21 A.D.2d 60, 66 (1st Dep't 1964).

Once a prima facie showing of self-interest is established, the burden shifts to directors to demonstrate that the transaction is fair and serves the best interests of the corporation. *Pinnacle Consultants, Ltd.* at 447; *Norlin Corp.* at 264.  Here, taking the facts as true, plaintiff had no role in managing the company, did no work, and had no corporate reason to receive payments or to pay his wife — who similarly performed no services. The withdrawals and checks served no legitimate corporate purpose whatsoever.  This is the definition of self-dealing: directors are self-interested in a challenged transaction where they will receive a direct financial benefit from the transaction which is different from the benefit to shareholders generally. Marx v. Akers, 88 N.Y.2d 189, 202 (1996). The business judgment rule, which ordinarily insulates officers from judicial review, provides no protection here because it will not insulate a director or officer from liability where his or her actions lack a legitimate and lawful business purpose and waste corporate assets. *Auerbach v. Bennett*, 47 N.Y.2d 619, 629 (1979); *M & M Country Store, Inc. v. Kelly*, 159 A.D.3d 1102, 1104 (3d Dept. 2018).

## POINT IV.

## DEFENDANTS HAVE STATED A VIABLE COUNTERLCLAIM FOR UNJUST ENRICHMENT

To state a claim for unjust enrichment under New York law, a party must allege that: (1) defendant was enriched; (2) at plaintiff's expense; and (3) equity and good conscience militate against permitting defendant to retain what plaintiff seeks to recover. *Snowbridge Advisors LLC v. ESO Capital Partners UK LLP*, 589 F.Supp.3d 401, 421 (S.D.N.Y. 2022).  All three elements are squarely satisfied here: plaintiff pocketed corporate funds (enrichment), those funds belonged to the corporation and

7

thus came at defendant's expense (expense element), and equity demands their return since the payments served no legitimate corporate purpose.

Unjust enrichment may be pleaded in the alternative alongside other counterclaims, including breach of fiduciary duty, and courts will not dismiss such alternative claims at the pleading stage. *Advanced Oxygen Therapy Inc. v. Orthoserve Inc.*, 572 F.Supp.3d 26, 35 (2021). Even if the other counterclaims ultimately succeed and provide a complete remedy, that is a post-discovery and post-trial determination — not a basis for a Rule 12(b)(6) dismissal. The unjust enrichment claim is independently viable and appropriately preserved as an alternative theory.

## POINT V.

## DEFENDANTS' COUNTERCLAIM FOR THE ESTABLISHMENT OF A CONSTRUCTIVE TRUST IS VIABLE

New York courts recognize four elements of a constructive trust: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment.  *In re Ades Berg Grp. Investors,* 550 F.3d 240, 245 (2d Cir.2008). quoting *Sharp v. Kosmalski,* 40 N.Y.2d 119 (1976); *Diversified Group., Inc. v. Daugerdas*, 139 F.Supp.2d 445, 461 (S.D.N.Y. 2001); *Amusement Industry, Inc. v. Stern*, 786 F.Supp.2d 758, 785 (S.D.N.Y. 2011). Importantly, courts have clarified that the constructive trust doctrine is "equitable in nature and should not be rigidly limited," and that while the four elements are guideposts, they do not require mechanical application. Diversified Group., Inc. at 461.  *Winklevoss Capital Fund, LLC v. Shrem,* 351 F.Supp.3d 710, 721 held that constructive trust may be pleaded as a standalone cause of action under New York law in federal court.

Here, the fiduciary relationship is established by plaintiff's status as a corporate

officer (element one). The implied promise by plaintiff to use his positional access only for legitimate corporate purposes, and defendant's reliance on that understanding in forming the corporation and opening a shared bank account (element two and three), supply the remaining elements. The unjust enrichment element is met by plaintiff's retention of corporate funds withdrawn for personal use (element four). Constructive trust is a recognized equitable remedy in cases of fiduciary breach, including to compensate the rightful owner of real, personal, or intellectual property that was wrongfully possessed or appropriated. *Winklevoss Capital Fund, LLC*, 351 F.Supp.3d at 720-1.

## CONCLUSION

The hallmarks of corporate officer self-dealing — taking funds for personal use, cutting unauthorized checks to family members, exploiting access to a shared account — are precisely what New York's corporate law is designed to remedy. In closely held corporations (or corporations formed between two individuals for a shared business purpose), courts are particularly attentive to the vulnerability of the true economic beneficiary when a nominally-titled officer exploits his position. Plaintiff opened his case by invoking the court's authority; that same authority is available to defendant to seek redress for the very misconduct that forms the backdrop of the litigation. The court should not allow the motion to dismiss to function as a shield against counterclaims grounded in the same facts plaintiff has already placed in issue.

Dated:  Mount Vernon, NY
      May 6, 2026

Respectfully submitted,

*Lila Ayers*

Lila Ayers, Esq.

9
